IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TONY GLEN MARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-11-426-M |
| | ) | |
| DR. MIKE JACKSON, M.D., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Tony Mark is a state prisoner who seeks relief under 42 U.S.C. § 1983.

Defendants Roof and Kilbury are entitled to summary judgment[1] on Count Three and part

of Count One, but not on Count Two and the remainder of Count One.

Background

Mr. Mark suffers from Hepatitis C, and the Department of Corrections ("DOC") has

a policy to manage the health of inmates with this condition.[2]   The protocol includes

counseling, blood tests, and a liver biopsy.  Special Report, Exhibit 2 at pp. 5-6.  If the blood

and liver results qualify, Interferon is prescribed.  *Id.*, Exhibit 2 at p. 6.

---

[1]    Defendant Robin Roof moved for dismissal and the Court converted the motion to one for summary judgment.  Defendant Roof's Motion to Dismiss and Brief in Support (Aug. 25, 2011); Enter Order (Aug. 26, 2011).  Subsequently, the Court granted Defendant Kilbury's request to join Defendant Roof's motion and adopt her arguments.  Application to Join Motion to Dismiss (Jan. 31, 2012); Enter Order (Feb. 16, 2012).  The motions are collectively referred to as "Defendants' Dispositive Motion."

[2]    *See* Report of Review of Factual Basis of Claims Asserted in Civil Rights Complaint Pursuant to 42 U.S.C. Section 1983, Exhibit 2 (Aug. 25, 2011) ("Special Report").

The Plaintiff states that a physician had recommended Interferon in 2002.  Civil Rights Complaint Pursuant to 42 U.S.C. Sect. 1983 at p. 13 (Apr. 19, 2011) ("Complaint"). For unknown reasons, the treatment never began.  Complaint at p. 8.  In 2006, Mr. Mark was transferred to the Cimarron Correctional Facility ("CCF"), where he expected the treatment to take place.  *Id.*  at p. 13.  It never did.  But the Plaintiff states that after a liver biopsy in August 2007, Dr. Clymer approved the use of Interferon.  *Id.* at p. 14, Exhibit A at pp. 1-2. But before the treatment was to begin, Dr. Kilbury allegedly replaced Dr. Clymer and rescinded the order for Interferon.  *Id.* at p. 9, Exhibit A at p. 2.

The alleged management of Mr. Mark's Hepatitis C and the denial of Interferon treatment led to the present suit, where Mr. Mark claims that prison officials at CCF had:

- delayed testing and treatment which ultimately resulted in his ineligibility for Interferon and

- wrongfully denied referral to a liver specialist, Interferon treatment, and narcotic pain medication.

*Id.* at pp. 5-12.  Mr. Mark also challenges the policy which governs treatment of inmates with Hepatitis C, arguing that it is constitutionally deficient because it fails to provide temporal guidelines for proper treatment.  *Id.* at pp. 13-15.

Defendants Roof and Kilbury seek summary judgment, arguing that the Plaintiff failed to exhaust administrative remedies and show a violation of the Eighth Amendment. Defendants' Dispositive Motion at pp. 2-14.  The Defendants are entitled to summary judgment based on:

- nonexhaustion of administrative remedies for the challenge to the policy and

- failure to present evidence of deliberate indifference through the disallowance of Interferon or referral to a liver specialist.

But Defendants Roof and Kilbury are not entitled to summary judgment on the claims involving a failure to provide narcotic medicine and a delay in treatment.

<u>Standard for Summary Judgment</u>

The Court should grant summary judgment when "there is no genuine dispute as to any material fact and [the movants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Parties may establish the existence or nonexistence of a material disputed fact through:

- submission of "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or"

- "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B).  When a summary judgment motion is filed, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party."  *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005) (citation omitted).

<u>Exhaustion of Available Administrative Remedies</u>

The Defendants argue that Mr. Mark had failed to exhaust administrative remedies on: (1) the claims in Count One which involve denial and delay of Interferon treatment, and (2) the claim in Count Three concerning the constitutionality of the policy for treatment of Hepatitis C.[3]  Defendants' Dispositive Motion at pp. 2-8.  Defendants Roof and Kilbury provide undisputed evidence that Mr. Mark did not properly exhaust administrative remedies on the claim involving the constitutionally infirmities in the DOC policy.  But the Court should reject the Defendants' exhaustion argument as it pertains to the alleged delay and denial of Interferon treatment.

I.      <u>Standard for Assessment of the Evidence</u>

Because exhaustion involves an affirmative defense,[4] the Defendants bear the burden of proof.[5]  As a result, the Defendants must demonstrate the absence of a disputed material fact on the issue of exhaustion.  *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).  If the Defendants satisfy this burden, Mr. Mark would incur a duty to "demonstrate with

---

[3]      Count One also involves the denial of a referral to a liver specialist and Count Two includes denial of pain medicine.  On the claim involving denial of a liver specialist, the Defendants are entitled to summary judgment on other grounds.  *See infra* pp. 16-17.  And the Defendants appear to concede exhaustion of the claim involving denial of narcotic pain medication.  *See* Defendants' Dispositive Motion at pp. 5-6.  Thus, the Court need not address the exhaustion issue as it pertains to these claims.

[4]      *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (concluding "that failure to exhaust is an affirmative defense under the [Prison Litigation Reform Act]").

[5]      *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) ("We . . . hold that the burden of proof for the exhaustion of administrative remedies in a suit governed by the [Prison Litigation Reform Act] lies with the defendant.").

specificity the existence of a disputed material fact." *Id.*  In the absence of such a showing,

the Defendants would be entitled to summary judgment on the affirmative defense.  *See id.*

II.      The Requirement of Administrative Exhaustion

Federal law provides:  "No action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are

exhausted." Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2006).  This law "requires

proper exhaustion" of the prison's administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81,

92 (2006).

III.     The Available Administrative Process

As stated above, the Defendants bear the burden to prove that the Plaintiff did not

properly utilize the available administrative remedies.  *See supra* p. 4.  Thus, the threshold

question involves identification of the administrative remedies that had been available to Mr.

Mark.  For the Plaintiff, the available remedies involved a four step process outlined in the

"Offender Grievance Process" in Department of Corrections OP-090124.  *See* Special

Report, Exhibit 5.

Under this process, the aggrieved person should begin by attempting to informally

resolve the matter with a staff member.  *See id.*, Exhibit 5 at p. 5.  If the attempt is

unsuccessful, the inmate may file a request to staff.  *See id.*, Exhibit 5 at pp. 5-6.  If

dissatisfied with the answer, the prisoner can file a grievance.  *See id.*, Exhibit 5 at pp. 6-7.

If the inmate remains dissatisfied, he can appeal to the administrative review authority based on "newly discovered/available evidence" or "probable error." *See id.*, Exhibit 5 at pp. 9-10.

IV.     Count One:  The Claims Involving Delay and Denial of Interferon Treatment

Mr. Mark believed that Interferon treatment would be administered upon his transfer to CCF in June 2006.  *See supra* p. 2.  But according to the Plaintiff, prison officials deliberately delayed the treatment and allowed the disease to progress to the point that he would no longer qualify for treatment.  Count One of the complaint is based on this delay and ultimate denial of Interferon treatment.  Complaint at pp. 9-12; Objection to Dispositive Motion of Robin Roof at pp. 6-8, 10 (Oct. 20, 2011) ("Plaintiff's Response").  Defendants Roof and Kilbury argue that Mr. Mark did not properly exhaust these claims at the administrative level.  They are not entitled to summary judgment on this basis.

A.     Mr. Mark's Attempts at Exhaustion

Mr. Mark twice attempted to exhaust the claims in Count One involving delay and denial of Interferon treatment.  Both efforts were rejected by the administrative review authority for procedural infirmities.  However, a triable issue of fact exists regarding the correctness of the second determination by the administrative review authority.

The first effort consisted of a request to staff, grievance, and appeal to the administrative review authority.  Special Report, Exhibit 4 at pp. 4-10.  All of these complaints addressed the alleged delay in, and ultimate denial of, Interferon treatment.  *Id.*

The administrative review authority returned the appeal unanswered because the grievance had not been timely submitted to the reviewing authority.  *Id.*, Exhibit 4 at p. 2.

With rejection of the appeal on procedural grounds, Mr. Mark began a second attempt to exhaust the claims.[6]  He again filed a request to staff, grievance, and appeal to the administrative review authority.  *Id.*, Exhibit 4 at pp. 20-28.  The administrative review authority returned the appeal without an answer to Mr. Mark because he had used an obsolete form for the grievance.  *Id.*, Exhibit 4 at p. 20.  The administrative review authority explained to Mr. Mark that he bore the responsibility to submit his grievance "in accordance with OP-090124" and advised him to read the policy before he submitted new correspondence.  *Id.*

B.    Mr. Mark's Arguments

"Once a defendant proves that a plaintiff failed to exhaust, . . . the onus falls on the plaintiff to show that remedies were unavailable."  *See Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).  In response, Mr. Mark contends that his efforts were adequate because:

- the first grievance was timely,

- prison officials prevented exhaustion by giving him "incorrect information" regarding the second rejection,

- rejection for use of an obsolete form was merely "pretextual" and prison policy did not mandate use of the most current form, and

---

[6]    In a request to staff dated September 27, 2010, Mr. Mark stated: "Gense [sic] McCoy returned 'Grievance' (#10-99) unanswered claiming it was improperly submitted.  I'm now re-submitting the same issue I complained about in grievance (#10-99)."  Complaint, Exhibit D at p. 10.

7

- authorities did not instruct him how to remedy the defects in the appeal.

Plaintiff's Response at pp. 1-4.  The Court should reject Mr. Mark's argument regarding his first grievance, but the arguments regarding the second grievance are persuasive.

<u>The First Grievance Was Properly Rejected as Untimely</u>

According to the policy, the grievance must be submitted by the complaining offender within fifteen calendar days of the response to the "request to staff" form.  Special Report, Exhibit 5 at p. 6.  The response to the "request to staff" bears a date of July 12, 2010. Complaint, Exhibit B at p. 10; Special Report, Exhibit 4 at p. 10.  Thus, Mr. Mark had until July 27, 2010, to submit a grievance.  *See supra* p. 8.  The undisputed evidence reflects submission of the grievance to the reviewing authority on July 30, 2010, three days after expiration of the deadline.  Complaint, Exhibit B at p. 8; Special Report, Exhibit 4 at p. 8.

Mr. Mark argues that prison officials had delayed his receipt of the response to the "request to staff."  According to the Plaintiff, he had timely submitted the grievance and "[t]he burden is on the Defendant to show he did not."  Plaintiff's Response at p. 2.  The Plaintiff's argument is invalid because the fifteen-day period begins with the signing of the response rather than the date of Mr. Mark's receipt.  *See* Special Report, Exhibit 5 at p. 6.[7]

---

[7]    Mr. Mark notes that at the next stage, appeal of the denial of a grievance, the fifteen-day period begins with "receipt" of the reviewing authority's response.  Plaintiff's Response at pp. 1-2; *see* Special Report, Exhibit 5 at p. 11.  But Mr. Mark's problem involved the deadline for the grievance rather than an appeal at the next stage of the administrative process.  *See supra* p. 7.

A Genuine Factual Dispute Existed Over the Correctness of the Decision to
Reject the Second Grievance

Defendants Roof and Kilbury contend that Mr. Mark failed to follow instructions for resubmission of the grievance after it had been returned to him for the use of an incorrect form. Defendants' Dispositive Motion at pp. 6-8. According to the Defendants, the failure to follow the instructions and resubmit the grievance rendered the claim unexhausted because the Plaintiff did not complete the administrative procedure. *Id.* But a genuine issue of material fact exists regarding correctness of the rejection.

"Improper rejection of a grievance appeal excuses the prisoner's failure to exhaust." *Burnett v. Jones*, 437 Fed. Appx. 736, 741 (10th Cir. Aug. 31, 2011) (unpublished op.), *cert. denied*, __ U.S. __, __ S. Ct. __, 2012 WL 538465 (Feb. 21, 2012) (No. 11-7585). The administrative review authority rejected the appeal, citing use of an obsolete grievance form. Special Report, Exhibit 4 at p. 20. The Defendants have attached the controlling policy, which mandates use of the "Offender Grievance Report Form." *Id.*, Exhibit 5 at pp. 6-8. But the policy does not expressly require use of the most current version of the form,[8] and the Defendants do not identify any deficiencies in the form submitted by Mr. Mark. In these circumstances, a reasonable fact-finder could conclude that the form used was permissible. *See Goebert v. Lee County*, 510 F.3d 1312, 1324-25 (11th Cir. 2007) (rejecting an exhaustion

---

[8]     The policy refers to the grievance form as "DOC 090124A." Special Report, Exhibit 5 at p. 6. But the Defendants have not filed a copy of "DOC 090124A." *See id.*, Exhibit 5 at p. 18. Thus, the Court has no evidence to determine whether the Plaintiff had used the form appearing in the DOC policy.

defense based on the inmate-plaintiff's use of a "'request form'" rather than the "official 'grievance form'").

The Defendants argue that Mr. Mark had been told how to remedy the defect and resubmit the grievance. This argument is invalid, legally and factually.

The argument is legally invalid because even if the Defendants are correct, the Plaintiff would already have completed the administrative process before they improperly rejected his appeal. *See supra* p. 9.

The Defendants' argument is also factually invalid, as authorities had simply: (1) explained that Mr. Mark should properly submit his grievance in accordance with the policy, and (2) instructed him to read the policy before he resubmitted the document. Special Report, Exhibit 5 at pp. 6-8. But authorities did not tell Mr. Mark how to remedy the alleged deficiency. *See id.*

Against this evidentiary backdrop, the trier of fact could reasonably conclude that Mr. Mark's use of his grievance form was permissible and that he had properly completed the administrative process through the second round of proceedings. Thus, the Defendants are not entitled to summary judgment on their exhaustion defense involving Count One.

V.    Count Three: The Claim Challenging the Constitutionality of the Hepatitis C Policy

In Count Three, Mr. Mark challenges the constitutionality of the DOC policy for management of inmates with Hepatitis C. Complaint at pp. 13-15. The Plaintiff acknowledges that the current policy allows evaluation, testing, and treatment of inmates

with Hepatitis C, but complains that the protocol lacks time guidelines. *Id.* at p. 14.  Under the Plaintiff's theory, the policy is constitutionally deficient because it allows prison officials to delay medical care of inmates with Hepatitis C until they are no longer eligible for certain kinds of treatment. *Id.* at pp. 14-15.

Mr. Mark presents no evidence of a request to staff, grievance, or appeal for the claim in Count Three.  Thus, the Court should grant summary judgment to Defendants Roof and Kilbury for nonexhaustion of administrative remedies on Count Three.

VI.   <u>Summary</u>

Mr. Mark complains about the:

- delay in providing Interferon treatment,

- denial of Interferon, and

- deficiency in the policy.

Defendants Roof and Kilbury have demonstrated a failure to utilize an available administrative remedy on the policy claim.  Thus, the Court should award summary judgment to Ms. Roof and Dr. Kilbury on this claim.  But on the Interferon claims, Mr. Mark has presented evidence that would reasonably imply completion of the administrative process.

Thus, for the Interferon claims, Ms. Roof and Dr. Kilbury are not entitled to summary judgment on exhaustion grounds.

Consideration of the Merits

The remaining claims would involve violation of the Eighth Amendment through:

- delay in the administration of Interferon treatment,

- denial of Interferon treatment,

- refusal to provide a liver specialist, and

- denial of narcotic pain medication.

Complaint at pp. 8-12; *see supra* note 3. On these claims, the Defendants urge summary judgment due to the absence of evidence regarding deliberate indifference. Defendants' Dispositive Motion at pp. 9-14. The Defendants are entitled to summary judgment on the claims involving denial of Interferon and referral to a liver specialist, but the Court should overrule the motion with respect to the claims involving delay in the administration of Interferon treatment and denial of a narcotic pain medication.

I.      Standard for a Constitutional Violation

Deliberate indifference to a prisoner's serious medical needs is actionable under Section 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). A prison official can incur liability when the deprivation was "sufficiently serious" and resulted from "deliberate indifference" to an inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

II.    Count One: Delay in the Administration of Interferon Treatment

Mr. Mark believed that he would begin Interferon treatment when he arrived at CCF in June 2006.  Complaint at p. 13, Exhibit A at p. 1.  Instead, prison officials allegedly delayed treatment so that the disease would progress to the point that Mr. Mark was no longer eligible for treatment.  *Id.* at pp. 8-12; Plaintiff's Response at pp. 6-8, 10.  The Defendants argue that Mr. Mark was being properly treated through:

- enrollment in the facility's chronic care program,

- submission, testing, and monitoring of blood samples,

- appointments with the facility's medical staff,

- medication,

- a liver ultrasound, and

- a liver biopsy.

Defendants' Dispositive Motion at p. 11.  According to the Defendants, this evidence reflects management of the disease and Mr. Mark's claim amounts to simply a disagreement with prison officials regarding the proper course of treatment.  *Id.* pp. 10-12.

According to the DOC protocol, Interferon was permissible only after prison officials had conducted blood tests, counseling, and a liver biopsy.  *See supra* pp. 1, 10-11.  The Defendants state that they had provided medical treatment for Mr. Mark while they pursued the necessary steps.  *See supra* p. 13.  But the Defendants' representation is not conclusively dictated by the evidence.

The earliest recorded medical visit is dated January 21, 2009, and the earliest laboratory report is dated nearly nine months later. *See* Special Report, Exhibit 3 at pp. 18, 23. Mr. Mark alleges that Defendants Roof and Kilbury had deliberately delayed the Interferon treatment, and the Defendants have not submitted any contrary proof. The Defendants' lack of evidence is fatal to their argument for summary judgment on the delay in treatment.

III.     Count One: Denial of Interferon Treatment and Referral to a Liver Specialist

Following the liver biopsy, Mr. Mark states that Dr. Clymer had approved him for Interferon treatment in 2007. *See supra* p. 2. But soon thereafter, Dr. Kilbury rescinded the approval and treatment never began. Complaint at pp. 6-7, 9, 13-14. According to the Defendants, the refusal of treatment was justified because medical contraindications would have rendered Mr. Mark ineligible for treatment. Defendants' Dispositive Motion at pp. 10-12. Four contraindications were outlined in a letter from Dr. Don Sutmiller:

- the results from a liver biopsy, which rated Mr. Mark's liver at a "Grade 3, Stage 3-4,"

- auditory hallucinations,

- a platelet count of 86,000, and

- an ammonia level of 131.

Special Report, Exhibit 3 at p. 2.

The Plaintiff argues that:

- a "Grade 3, Stage 3-4" liver test qualifies for treatment under the guidelines of the DOC and Federal Bureau of Prisons,

- the ammonia and platelet levels were not contraindications for Interferon, and

- in 2007 a CCF psychiatrist had declared Mr. Mark "mentally sound."

Complaint at p. 10; Plaintiff's Response at pp. 6-7.

Mr. Mark's arguments are not persuasive.  The Hepatitis C policy does indicate that a prisoner can qualify for treatment if his grade of inflammation reaches a "grade" of "3." Plaintiff's Response, Exhibit 1 at p. 4.   But the policy also states that treatment is contraindicated if the degree of fibrosis reaches "Stage 4" and the disease is uncompensated. *Id.*

Dr. Sutmiller noted that Mr. Mark's elevated ammonia and low platelet counts had provided evidence of poor compensation.  Special Report, Exhibit 3 at p. 2.  Mr. Mark challenges the ammonia and platelet levels as evidence which would prevent treatment, but he provides no support.  And Mr. Mark lacks proof of his mental health clearance.  As Dr. Sutmiller noted, the history of auditory hallucinations would constitute a "contraindication" to Interferon treatment.[9]

---

[9]     Special Report, Exhibit 3 at p. 71; *see Francisco v. Correctional Medical System*, 548 F. Supp. 2d 128, 129 (D. Del. 2008) ("psychiatric illness is a 'contraindication' for Interferon/Ribavirin treatment" (citation omitted)).

The undisputed evidence reflects medical contraindications to Interferon treatment. Dr. Sutmiller outlined the contraindications in a letter and the physician's opinion entitles Defendants Roof and Kilbury to summary judgment on this claim.[10]

IV.     Count One: Referral to a Liver Specialist

The Plaintiff believes that a liver specialist would approve Interferon treatment and alleges that he has been wrongly denied referral to a specialist.  Complaint at p. 10.  Ms. Roof and Dr. Kilbury are entitled to summary judgment on this claim.

Mr. Mark states:

> [T]he CCA/CCF defendants  claim that the plaintiff is not eligible for the Hep "C" treatment because he is too advanced in the disease.  The plaintiff disagrees. . . .  Plaintiff believes that if he was re-evaluated by a liver specialist, the specialist would give the approval for the plaintiff to begin the Interferon/Ribavirin treatment, or at least prescribe the correct medications to slow the Hep "C"/Cirrhosis disease.

*Id.*  But Mr. Mark's plea for referral to a liver specialist is based solely on his disagreement over the proper medical care.  This sort of disagreement cannot create liability for violation of the Eighth Amendment.  *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("a difference of opinion does not support a claim of cruel and unusual punishment" (citation

---

[10]     *See Taylor v. Ortiz*, 410 Fed. Appx. 76, 79 (10th Cir. Nov. 19, 2010) (unpublished op.) (upholding summary judgment for the defendants because their undisputed medical attention rendered the denial of Interferon treatment a mere disagreement over the proper treatment for the plaintiff's Hepatitis C), *cert. denied*, __ U.S. __, 131 S. Ct. 2153 (2011); *Free v. Unknown Officers of the Bureau of Prisons*, 103 Fed. Appx. 334, 336-37 (10th Cir. June 29, 2004) (unpublished op.) (holding as a matter of law that the denial of Interferon to a prisoner with Hepatitis C did not violate the Eighth Amendment because it involved a mere disagreement over the proper treatment).

omitted)).   In these circumstances, Ms. Roof and Dr. Kilbury are entitled to summary judgment on the claim involving denial of a referral to a liver specialist.

V.     Count Two: Denial of a Prescription Narcotic Medication

Mr. Mark also alleges deliberate indifference to his medical needs through the failure to prescribe a narcotic medication for pain relief.  Complaint at p. 12.  Defendants Roof and Kilbury are not entitled to summary judgment on this claim.

In the complaint[11] and an affidavit, Mr. Mark states under oath that he suffers from severe stomach pain, which requires treatment through the use of a prescription narcotic medication.  *Id.* at p. 12, Exhibit A.  According to the Plaintiff, the Defendants have purposely disallowed the use of "a pain-killing narcotic to alleviate the excruciating pain that he suffers on a daily basis."  *Id.* at p. 12.

In response to the Plaintiff's allegations, Defendants Roof and Kilbury allege that Mr. Mark's "medical chart shows no expressed need for a narcotic pain medication." Defendants' Dispositive Motion at p. 13.  As evidence, the Defendants cite a response by the reviewing authority to a grievance in which Mr. Mark had requested narcotic pain medication.  *Id.*  There the reviewing authority stated:

> A review of your medical record reveals you were examined by our provider 4/29/10 and 6/7/10.  There is no documentation regarding a complaint of or a need for pain control.

---

[11]     For purposes of summary judgment, the verified complaint is treated as an affidavit.  *See Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (*per curiam*); *see also* Complaint at p. 19 (verification).

> Of your past 8 Request to Staff (RTS) dated: 4/7/10, 4/7/10, 4/30/10, 5/14/10, 6/3/10, 6/20/10, 7/8/10, and 7/19/10, you stated (4/7/10) you had not been coming to pill line because taking "those pills" gave you "extreme abdominal pain." You did not identify which pills you were concerned about and I find no record of discussion of this with any medical staff.
>
> You are currently prescribed Lactulose and Spironolactone, both of which assist with symptoms of liver disease. You also receive a host of other medications to assist you in maintaining optimum health.
>
> You will not receive a narcotic for pain control.

Special Report, Exhibit 4 at p. 15.

In their dispositive motion, the Defendants appear to rely on the grievance response as evidence that the Plaintiff had not exhibited a need for pain medication and that he otherwise obtained adequate treatment. But the grievance response does not prevent a genuine issue of material fact.

The grievance response refers to medical treatment on April 29, 2010. Indeed, on that date, the medical provider's progress notes state that Mr. Mark had appeared because of a complaint involving abdominal pain. *Id.*, Exhibit 3 at p. 13. But the notes do not reflect any treatment or medication for the pain. *Id.*

For purposes of summary judgment, the issue is whether the evidence — read in the light most favorable to the Plaintiff — could justify a finding of deliberate indifference and sufficient seriousness of the pain. *See supra* p. 3. Even with the grievance response, the trier of fact could rely on evidence involving:

- a sworn statement by the Plaintiff regarding stomach pain, which he characterized as "severe" and "extreme"[12] and

- a progress note which showed a complaint about abdominal pain with no corresponding reference to any treatment or medication.[13]

Construed in the light most favorable to the Plaintiff, this evidence creates a genuine issue of material fact regarding deliberate indifference to a serious medical need. Consequently, Defendants Roof and Kilbury are not entitled to summary judgment on Count Two.

Summary of the Recommended Rulings

Ms. Roof and Dr. Kilbury are entitled to summary judgment for nonexhaustion of administrative remedies on Count Three. In light of the undisputed evidence, the two defendants are also entitled to summary judgment on the claims in Count One involving denial of Interferon treatment and referral to a liver specialist. But the Court should overrule the motion for summary judgment with respect to the claims in Count One involving a delay of Interferon treatment and in Count Two for denial of narcotic pain medication.

Notice of the Right to Object

The parties can object to this report. To object, the party must file an objection with the Clerk of this Court by March 24, 2012. *See* 28 U.S.C. § 636(b)(1) (2006). The failure to timely object would foreclose appellate review of the suggested rulings. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[12]     *See* Complaint at p. 12 & Exhibit A.

[13]     *See supra* p. 18.

<u>Status of the Referral</u>

The referral is not discharged.

Entered this 12th day of March, 2012.


_____
Robert E. Bacharach
United States Magistrate Judge