IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

TONY GLEN MARK,                )
                               )
        Plaintiff,              )
                               )
                               )     CIV-11-426-M
v.                              )
                               )
MIKE JACKSON, et al.,           )
                               )
        Defendants.             )

REPORT AND RECOMMENDATION

In April 2011, Plaintiff, a state prisoner appearing with court-appointed counsel[1], filed this civil rights action pursuant to 42 U.S.C. § 1983. In his Complaint, Plaintiff named Dr. Mike Jackson, in his official capacity as the former chief medical officer for the Oklahoma Department of Corrections ("ODOC"); Dr. Wade Warren, in his official capacity as a former physician employed by Cimarron Correctional Facility ("CCF"); Ms. Robin Roof, in her official capacity as the Healthcare Service Administrator for CCF; Dr. Kilbury, in his official capacity as a physician employed by CCF; and Joseph Harp Correctional Center ("JHCC") Medical Administrator "Jane Doe" as Defendants. (Docs. # 1, 9). In consideration of

---

[1]On September 11, 2012, former Magistrate Judge Bacharach appointed Ms. Cheryl Watley, on behalf of the University of Oklahoma College of Law legal clinic, to represent Mr. Mark, and Ms. Wattley subsequently entered an appearance as Plaintiff's counsel.

1

Plaintiff's motion to substitute parties, Defendant Ms. Glenda Lee, named in her official capacity as the former JHCC Medical Administrator, was later substituted for Defendant "Jane Doe." (Docs. # 20, 21).

Before the Court is Defendant Warren's Motion for Summary Judgment filed September 14, 2012. (Doc. # 166). Although Plaintiff was granted two extensions of time to respond to the Motion, to this date Plaintiff has not filed a response, and the time for filing a response expired two weeks ago, on June 19, 2013.

I. Plaintiff's Claims

Plaintiff has been in ODOC custody since May 1986. Plaintiff contends that he was first diagnosed with hepatitis C viral infection in 1973, and that he has since been diagnosed with "advanced chronic liver disease, grade-3, stage 3-4 Cirrhosis." Complaint (Doc. # 1), at 10. Plaintiff contends that ODOC has a policy, which he describes as "Management of Hepatitus [sic] 'C' MSRM 140137-06," for the treatment of inmates with chronic hepatitis C viral infection. Id., at 14. This protocol includes counseling, blood tests, and a liver biopsy. Special Report, Ex. 2, at 5-6. If the inmate's blood tests and liver biopsy results qualify, the medication Interferon is prescribed. Id. at 6.

Plaintiff was transferred to CCF, a private prison housing Oklahoma prisoners under a contract with ODOC, in June 2006. In August 2007, he underwent a liver biopsy at a municipal hospital. According to Plaintiff, in 2007 CCF physician Dr. Clymer reviewed the liver biopsy report and recommended Plaintiff for treatment with the medications Interferon and Ribavirin under ODOC's policy. Before the treatment began, Dr. Kilbury replaced Dr.

Clymer as the physician for CCF, and Dr. Kilbury determined that Plaintiff was not a candidate for treatment with Interferon and Ribavirin.

The Complaint alleges five distinct claims for § 1983 relief. In count one, Plaintiff alleges Defendants Roof and Kilbury acted with deliberate indifference to Plaintiff's serious medical needs by, first, denying Plaintiff treatment under ODOC's protocol with the medications Interferon and Ribavirin in violation of his Eighth and Fourteenth Amendment rights and, second, by denying Plaintiff the opportunity to be evaluated by a "qualified liver specialist." Id., at 10. In count one, Plaintiff also alleges a third claim that Defendants Roof and Kilbury acted with deliberate indifference to Plaintiff's serious medical needs by delaying evaluation and treatment with Interferon and Ribavirin until he was ineligible for Interferon treatment.

In count two, Plaintiff alleges a fourth claim that Defendants Roof and Kilbury acted with deliberate indifference to his serious medical needs by denying Plaintiff narcotic pain medications for pain caused by his hepatitis C viral infection and cirrhosis of the liver or by failing to "transfer [him] to a prison facility where he can be treated for the stomach pain that worsens on a daily basis." Id. at 12.

In count three, Plaintiff alleges a fifth claim that ODOC's protocol for treating inmates with hepatitis C viral infection and/or cirrhosis of the liver is unconstitutionally deficient because it fails to provide time guidelines for proper treatment.

The only specific allegations Plaintiff makes against Defendant Warren are set forth in pages 3 and 4 of the Complaint. Here, Plaintiff alleges that he "advised Dr. Warren about

3

his frequent liver pains that he experiences on a daily basis [and] he has further explained to Dr. Warren how excruciating the pains are. . . . Dr. Warren has excused these pains as (GAS). Dr. Warren has further indicated that plaintiff does not fit the criteria for the Hep 'C'/Cirrhosis Interferon/Ribavirin treatment. As the records reflect, Dr. Warren is aware that plaintiff suffers from chronic liver disease namely 'Hepatitus [sic] C'/Cirrhosis of the liver." Further, "[a]s defendant Warren has participated directly in the alleged constitutional violations that occurred in the claims herein, Dr. Warren exhibited deliberate indifference to the rights of the plaintiff. Plaintiff respectfully request[sic] that Dr. Wade Warren should not be granted qualified immunity by this Honorable Court." Complaint, at 3-4. Plaintiff's allegations are generously construed to assert claims against Defendant Warren for denial and/or delay of treatment with Interferon and Ribavirin for his Hepatitis C viral infection and cirrhosis of the liver and denial of narcotic pain medication for pain caused by his hepatitis and cirrhosis conditions.

II. Background

The action was initially referred to former United States Magistrate Judge Bacharach pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. # 4). On March 5, 2013, the referral was transferred to the undersigned Magistrate Judge. Defendants caused the filing of a special report consistent with Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978), and the Court's Order. (Docs. # 10, 26).

In previous Reports and Recommendations, former Magistrate Judge Bacharach recommended that summary judgment issue with respect to Plaintiff's claims challenging

4

ODOC's hepatitis C treatment policy on nonexhaustion grounds. Former Magistrate Judge Bacharach also recommended that summary judgment issue with respect to Plaintiff's claim of deliberate indifference through the denial of treatment with Interferon or referral to a liver specialist. However, former Magistrate Judge Bacharach recommended that summary judgment be denied with respect to Plaintiff's claims of (1) a failure to provide narcotic pain medication and (2) a delay in treatment. He also recommended that Defendants Jackson and Lee be dismissed from the action. These recommendations were adopted by United States District Judge Miles-LaGrange.

III. Standard of Review

Summary judgment may be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local, 462 F.3d 1253, 1258 (10th Cir. 2006)(quotation omitted). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. "At the summary judgment stage, a complainant cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." Burke, 462 U.S. at 1258 (internal quotation marks and citations

5

omitted).² "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)(quotations omitted).

IV. <u>Uncontroverted, Material Facts</u>

Because Plaintiff has failed to timely file a responsive pleading to Defendant Warren's Motion for Summary Judgment in compliance with the Court's local procedural rules and Fed. R. Civ. P. 56©, the material facts set forth in Defendant Warren's Motion for Summary Judgment, which are supported by the record and affidavits, are deemed admitted by Plaintiff.³

The uncontroverted, material facts are:

1. Plaintiff is an inmate who at all times relevant to this action was incarcerated at CCF, Cushing, Oklahoma. Plaintiff is in the custody of the ODOC.

2. Corrections Corporation of America, Inc. has contracted with ODOC to house convicted felons.

3. CCF has an on-site medical clinic for the care and routine medical treatment of inmates confined at the facility.

4. Plaintiff has been confined with ODOC since 1986. His ODOC medical record is

---

²In a prisoner civil rights case such as this one, the plaintiff's complaint is treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. <u>Hall</u>, 935 F.2d at 1111.

³"All material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." LCvR 56.1©.

extensive, containing hundreds of pages of physicians' orders, medical staff progress notes, laboratory reports, consult records, clinic reports, and pharmacy records.

5. Wade Warren, D.O., was employed at CCF as a physician from April 1, 2010 until April 1, 2011.

6. Dr. Warren has been a licensed physician in the State of Oklahoma since 1976.

7. Plaintiff's medical record for the time period of Dr. Warren's employment at CCF shows that Plaintiff reported to the prison's medical clinic for treatment of "abdominal pain" four times - April 29, 2010, September 30, 2010, November 3, 2010, and February 21, 2011.

8. On April 29, 2010, a Progress Note indicates Plaintiff was seen in the prison's Hepatitis C chronic care clinic. He reported abdominal pain and requested Benadryl®.

9. On April 29, 2010, a Progress Note indicates Plaintiff's blood pressure was 132/88, respirations were 18, pulse was 84, weight was 231, temperature was 98.6, and oxygen saturation was 98.0.

10. Regarding his request for Benadryl®, Dr. Warren prescribed Loratadine, a generic allergy medication.

11. Dr. Warren met with and examined Plaintiff on April 29, 2010.

12. Narcotic pain medications are metabolized in the liver.

13. Narcotic pain medications were not prescribed for Plaintiff's reported abdominal pain on April 29, 2010.

14. On September 30, 2010, Progress Notes for Plaintiff indicate Plaintiff was seen in the prison's medical clinic where he complained of severe, left-sided abdominal pain and stated

he was unable to sleep due to the pain.

15. On September 30, 2010, Plaintiff's vital signs were taken. His blood pressure was 130/70, respirations were 18, pulse was 70, weight was 221, and temperature was 97.4.

16. Dr. Warren met with and examined Plaintiff on September 30, 2012.

17. The record of this visit shows Dr. Warren noted the results of a physical examination of Plaintiff.

18. Plaintiff's vital signs were essentially normal for a man of his age.

19. Narcotic pain medications were not prescribed for Plaintiff's reported abdominal pain.

20. On November 3, 2010, Progress Notes for Plaintiff show he visited the prison's medical clinic and complained of abdominal pain and itchiness.

21. On November 3, 2010, Plaintiff's vital signs were taken. His blood pressure was 138/80, respirations were 18, pulse was 74, weight was 220, and temperature was 97.0.

22. Dr. Warren met with and examined Plaintiff on November 3, 2010.

23. The Progress Note for Plaintiff on that date shows Dr. Warren noted the results of a physical examination of Plaintiff and that Plaintiff complained of a persistent itchy rash on his torso, jock itch, gastrointestinal cramps, and an increase in gas.

24. Dr. Warren assessed Plaintiff on November 3, 2010, as having constipation, scabies, and jock itch, for which medications were prescribed.

25. Narcotic pain medications were not prescribed for Plaintiff's reported abdominal pain on November 3, 2010.

26. On February 21, 2011, Progress Notes indicate Plaintiff was seen in the prison's medical

clinic where he complained of severe lower abdominal pain radiating around to the flank area.

27. A urine sample was obtained and charted as foul smelling, amber colored, and containing blood.

28. The nursing staff called Dr. Warren, and Dr. Warren ordered that Plaintiff be housed in the prison's medical facility and that his urine be checked regularly.

29. Dr. Warren prescribed Cipro®, an antibiotic medication, to address the possible urinary tract infection, Phenergan® for potential nausea, and Toradol®, a nonsteroidal, anti-inflammatory medication used to treat moderate to severe pain, with the Toradol to be given to Plaintiff twice a day for up to five days to address Plaintiff's complaint of severe lower abdominal pain.

30. During the period of time of Dr. Warren's employment at CCF, Plaintiff was enrolled in the prison medical facility's Hepatitis C chronic care clinic.

31. During the period of time of Dr. Warren's employment at CCF, Plaintiff was seen in the prison facility's medical clinic on fourteen occasions.

31. During the period of time of Dr. Warren's employment at CCF, Plaintiff's ammonia levels consistently remained high even though he was regularly prescribed the medication Lactulose to treat this condition.

32. Plaintiff's measured ammonia level on April 21, 2010, was 268, and on October 1, 2010, it was 107.

33. Lactulose is a synthetic non-digestible sugar used in the treatment of hepatic

encephalopathy, a complication of liver disease. Lactulose helps draw ammonia from the body.

34. Dr. Warren met with Plaintiff on December 14, 2010, at CCF and discussed treatment of Plaintiff's hepatitis C viral infection with Interferon and Ribavirin.

35. During the period of time of Dr. Warren's employment at CF, treatment of Plaintiff's hepatitis C infection and hepatic cirrhosis with Interferon and Ribavirin was not medically indicated, according to the affidavit of Dr. Warren.

Plaintiff's Eighth Amendment claim against Dr. Warren is governed by the Supreme Court's decision in Farmer v. Brennan, 511 U.S. 825 (1994), in which the Court reiterated that a "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828. Because prisoners have been "stripped ... of virtually every means of self-protection and ... their access to outside aid [has been foreclosed]," the Court reasoned that "the government and its officials are not free to let the state of nature take its course." Id. at 833.

With respect to the issue of medical care, the Eighth Amendment is violated if prison officials show "deliberate indifference to an inmate's serious medical needs." Mata v. Saiz 427 F.3d 745, 751 (10th Cir. 2005). This standard is violated if the prison "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference." Self v. Crum, 439 F.3d 1227, 1231 (10th Cir. 2006)(quoting Farmer, 511 U.S. at 837).

A plaintiff claiming that prison officials have been deliberately indifferent to the prisoner's medical needs must prove two elements. The prisoner must show that, objectively, the inmate's medical needs were "sufficiently serious," and, subjectively, the prison official acted with a "sufficiently culpable state of mind" such that the official knew of and disregarded an excessive risk to the inmate's health. Id. at 1230-1231; see also Mata, 427 F.3d at 751. A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or ... is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)(internal quotation omitted).

With respect to Plaintiff's claim against Defendant Warren based on a failure to prescribe narcotic pain medication, Defendant Warren asserts that Plaintiff has not shown either a sufficiently serious medical need for narcotic pain medication or that Defendant Warren was deliberately indifferent to a substantial risk of harm to Plaintiff by not prescribing narcotic pain medication.

The undisputed facts, which are substantiated by Plaintiff's medical records and Defendant Warren's affidavit, show that on each of the four occasions during the relevant time period of Defendant Warren's employment at CCF that Plaintiff complained of pain Plaintiff was seen and examined by Dr. Warren and Dr. Warren provided treatment, including medications, to address Plaintiff's complaints. Defendant Warren explained in his affidavit that "[d]uring my medical care of [Plaintiff], there was no medical basis for the prescribing of narcotic pain medications to treat [Plaintiff]. And, it would not have been

appropriate to prescribe narcotic pain medications to treat [Plaintiff] since his poorly functioning liver would be impaired in metabolizing the drug." Defendant Warren's Motion for Summary Judgment and Brief in Support Thereof (Doc. # 166), Ex. 3. This averment is uncontroverted.

Nothing in the record reflects that the treatment prescribed for Plaintiff's complaints of pain was improper, inadequate to treat his pain symptoms, or created a substantial risk of harm to Plaintiff. Even assuming that Plaintiff had a sufficiently serious medical need due to his chronic hepatitis C infection and cirrhosis of the liver, a reasonable jury could not infer that Dr. Warren was deliberately indifferent to a substantial risk of harm to Plaintiff by declining to prescribe narcotic pain medication. Therefore, Defendant Warren is entitled to summary judgment with respect to Plaintiff's Eighth Amendment claim against him of a denial of narcotic pain medication.

With respect to Plaintiff's remaining claims against Defendant Warren for denying and/or delaying Plaintiff's treatment with Interferon and Ribavirin to treat his hepatitis C infection and cirrhosis of the liver, Defendant Warren seeks summary judgment.

It is undisputed that (1) Dr. Warren met with Plaintiff on December 14, 2010, at CCF and discussed treatment of Plaintiff's hepatitis C viral infection with Interferon and Ribavirin and (2) during the period of time of Dr. Warren's employment at CCF, treatment of Plaintiff's hepatitis C infection and hepatic cirrhosis with Interferon and Ribavirin was not medically indicated, according to the affidavit of Dr. Warren.

In his affidavit, Dr. Warren avers that he

12

> met with [Plaintiff] on December 14, 2010, at [CCF]. He presented to the medical clinic that afternoon complaining of an itchy rash, hay fever, and requesting he be treated with Interferon for Hepatitis C. After the nurse obtained his pulse, respirations, blood pressure, temperature and weight, I reviewed [Plaintiff's] medical record, to include laboratory reports, a liver biopsy report, Progress Notes, and other Physicians' Orders and recommendations. I told [Plaintiff] that based on all the tests, reports, observations, records, orders, notes, and recommendations contained in his medical file, treatment of his Hepatitis C viral condition with Interferon and Ribavirin was not medically appropriate. I charted in [Plaintiff's] medical record for that day that I had discussed Interferon treatment for Hepatitis C with [Plaintiff] to his apparent satisfaction. I also charted that day that he was to be provided Benadryl 25 mg for 10 days for the complained-of rash and hay fever.
>
> During my medical care of [Plaintiff] from early 2010 to early 2011, [Plaintiff] was not an appropriate candidate for treatment of his viral Hepatitis C condition with Interferon and Ribavirin; contraindications to such treatment were evident during my medical care of him. From my review of his medical record, contraindications to such treatment had been clearly documented in his medical file for many years and he was instead appropriately enrolled in and regularly cared for by the [CCF] medical facility's Hepatitis C chronic care clinic.

Defendant Warren's Motion for Summary Judgment and Brief in Support Thereof (Doc. #166), Ex. 3. There is no evidence in the record that controverts Defendant Warren's affidavit, and Defendant Warren's averments are supported by the medical record and the affidavit of Defendant Roof. Id., Exs. 1, 2A, 2B, 2C. 2D, 2E.

Moreover, ODOC's policy for management of Hepatitis C viral infection provides that for an inmate with Stage 4 fibrosis, as interpreted in a liver biopsy, with uncompensated cirrhosis, "treatment is contraindicated. Enroll in Chronic Liver Disease chronic clinic." Id., Ex. 2F, at 16. Plaintiff admits that his liver biopsy was interpreted as "grade 3, stage 3-4."

13

Complaint, at 10. See id., Ex. 2E, at 2 (liver biopsy report as interpreted by Dr. Steven Magness).

Further, Dr. Sutmiller, in his capacity as ODOC's northeast regional lead physician, stated in an August 2008 letter addressed to Defendant Roof that he had reviewed Plaintiff's record and that the record reflected "ammonia of 131 on 6-17-08" indicating "advanced liver disease/cirrhosis, which is a contraindication to treatment," his low platelet count was a "contraindication to treatment," and his liver biopsy result was "Grade 3, Stage 3-4. Grade 3, Stage 4 is a contraindication to treatment unless there is evidence of well compensated disease. The elevated ammonia and low platelet count are evidence of poor compensation. . . . It appears that this patient has multiple medical contraindications to treatment of Hepatitis C with [Pegasys, or peginterferon alfa-2a] and [Copegus, or ribavirin]."[4] Defendant's Motion for Summary Judgment and Brief in Support Thereof, Ex. 2G. As former United States Magistrate Judge Bacharach previously found, "[t]he undisputed evidence reflects medical contraindications to Interferon treatment" based largely on Dr. Sutmiller's letter outlining the contraindications and the physician's opinion. Report and Recommendation (Doc. # 107), at 16.

Viewing the uncontroverted facts in the light most favorable to the Plaintiff, a reasonable jury would not find in favor of Plaintiff with respect to his claim against Defendant Warren for denying or delaying Plaintiff treatment for his hepatitis C viral

---

[4]http://www.rxlist.com/pegasys-drug.htm

infection and cirrhosis of the liver with Interferon and Ribavirin. Accordingly, Defendant Warren's Motion for Summary Judgment should be granted.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendant Warren's Motion for Summary Judgment (Doc. # 166) be GRANTED and that judgment issue in favor of Defendant Warren and against the Plaintiff. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by  July 29th , 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation partially disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this   8th   day of    July   , 2013.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE